# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 19-cv-60853-BLOOM/Reid

ZACHARY CHANDLER,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court upon Petitioner Zachary Chandler's ("Petitioner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. [1] ("Petition"). The Court issued an Order to Show Cause requiring the Government to respond to the Petition, ECF No. [4], which the Government filed, ECF No. [6] ("Response"). Petitioner thereafter filed a Reply, ECF No. [13] ("Reply"). The Court has carefully reviewed the Petition, all opposing and supporting submissions, the record in this case and Petitioner's underlying criminal case,[1] the applicable law, and is otherwise fully advised. For the reasons discussed below, the Petition is denied.

## I.   BACKGROUND

On December 1, 2015, Petitioner was arrested after attempting to rob a gas station with a firearm. CR ECF No. [1]. Petitioner was recognized by the gas station employee as the same individual who successfully robbed the same gas station on November 8, 2015. *Id.* On December 15, 2015, Petitioner was indicted for robbing six other gas stations in the previous six weeks, for

---

[1] *United States v. Chandler*, No. 15-cr-60318-BB-1 (S.D. Fla. 2015). Reference to the docket in the criminal case is denoted as "CR ECF No. [ ]."

a total of eight robberies, based on the certain evidence, including video camera footage at each gas station; Petitioner's articles of clothing; Petitioner's firearm; and the manner in which Petitioner brandished his firearm in each video recording. CR ECF No. [12].

On January 25, 2016, Petitioner pled guilty to the following charges: Hobbs Act robbery (Counts 1, 3, 5, 7, 9, 11, 13, and 15), in violation of 18 U.S.C. § 1951(a); discharge of a firearm in furtherance of a crime of violence (Count 10), in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and brandishing a firearm in furtherance of a crime of violence (Count 12), in violation of 18 U.S.C. § 924(c)(1)(A)(ii). CR ECF No. [46]. Petitioner was thereafter adjudicated guilty and sentenced to a term of imprisonment of 480 months, consisting of 60 months as to counts 1, 3, 5, 7, 9, 11, 13, and 15 to run concurrent, a mandatory 120 months as to count 10 and a mandatory 300 months as to count 12, with counts 10 and 12 to run consecutive to each other and to all the other counts; and 3 years of supervised release as to all counts to run concurrent. CR ECF No. [69]. Petitioner appealed the judgment to the Court of Appeals for the Eleventh Circuit, CR ECF No. [75], and, on June 22, 2017, the judgment was affirmed. *United States v. Chandler*, 699 F. App'x 863, 863 (11th Cir. 2017). Petitioner then filed a writ of certiorari before the United States Supreme Court, which was denied on March 19, 2018. *Chandler v. United States*, 138 S. Ct. 1281 (2018).

Petitioner now files the instant § 2255 Petition, which was mailed from Petitioner's prison facility to the United States District Court for the Southern District of Florida on March 22, 2019,[2] and which the Clerk's Office docketed on April 1, 2019. ECF No. [1].

The Petition seeks relief premised upon four claims: (1) Petitioner's guilty plea "was not voluntary and intelligently [sic] due to the misrepresentation by Mr. Spivack [Petitioner's attorney

---

[2] Although the Petition itself is signed and dated February 28, 2019, ECF No. [1] at 12, the accompanying envelope reflects the mailing date of March 22, 2019, *id.* at 13. *Cf. Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (the Court presumes, "[a]bsent evidence to the contrary, . . . that a prisoner delivered a filing to prison authorities on the date that he signed it").

during criminal case] in failing to file a motion *in limine* prohibiting Petitioner's roommate and Stepmother from giving their lay opinion"; (2) Petitioner's guilty plea "was not voluntary and intelligently [sic] due to the misrepresentation by Mr. Spivack in informing [Petitioner] that their trial strategy was sympathy"; (3) Petitioner's guilty plea "was not voluntary and intelligently [sic] due to Mr. Spivack failing to conduct a defense investigation"; and (4) A preservation argument that "Hobbs Act robbery is not a crime of violence under the element clause and § 924(c)(3)(B) is unconstitutionally vague." ECF No. [1].

The Government contends the Petition is untimely because it was filed past the one-year statute of limitations period applicable to § 2255 motions. Moreover, it claims that Petitioner is not entitled to equitable tolling and that, in any event, the Petition is meritless. ECF No [6].

## II.    LEGAL STANDARD

A prisoner is entitled to relief under section 2255 if his or her sentence (1) violates the Constitution or laws of the United States, (2) was not within the Court's jurisdiction to impose, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States,* 657 F.3d 1190, 1194 (11th Cir. 2011). Thus, relief under section 2255 is reserved for violations of constitutional rights, and "for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court finds a claim under section 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255. Petitioner bears the burden of proof. *See Beeman v. United States,* 871 F.3d 1215, 1221-22 (11th Cir. 2017).

### A. Timeliness of the Petition

Pursuant to § 2255(f),

a 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Therefore, a petition must be filed within one-year of the latest date of these four points in time, otherwise the petition will be untimely and denied by the Court on its face. *Id.*

"Under the prison mailbox rule, a *pro se* prisoner's § 2255 motion is deemed filed on the date the prisoner delivers the motion to prison authorities for mailing." *Houser v. United States*, 808 F. App'x. 969, 971 (11th Cir. 2020); *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (quoting *Jeffries,* 748 F.3d at 1314 (the Court presumes, "[a]bsent evidence to the contrary, . . . that a prisoner delivered a filing to prison authorities on the date that he signed it")).

Rule 3(d) of the Rules Governing Section 2255 Proceedings states:

(d) Inmate Filing. A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

28 U.S.C. § 2255 R.3(d).

**B. Ineffective Assistance of Counsel**

When a petitioner challenges a guilty plea "based on ineffective assistance of counsel" the two-pronged test derived from *Strickland v. Washington*,[3] is applied. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see also Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir. 1994) (stating that ineffective assistance of counsel claims are governed by the two *Strickland* prongs). *Strickland* states that "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death has two components. First, the defendant must show that counsel's performance was deficient. . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

The first prong of deficiency, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Weeks*, 26 F.3d at 1036; *Chandler v. United States*, 218 F.2d 1305, 1313 (11th Cir. 2000). Also, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*; *see also Chandler*, 218 F.2d at 1318 ("[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a non-exhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly.").

---

[3] *See generally Strickland v. Washington*, 466 U.S. 668 (1984).

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In fact, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *but see Padilla v. Kentucky*, 130 U.S. 1473, 1485 (2010) ("a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). Both prongs must be satisfied in order for an ineffective assistance of counsel claim to be successful. *Strickland*, 466 U.S. at 687; *Weeks*, 26 F.3d at 1037; *Padilla*, 130 U.S. at 1483-84. If one prong is not met, the other prong need not be examined. *Strickland*, 466 U.S. at 697.

## III.   DISCUSSION

### A.  Timeliness

Here, the parties acknowledge that the issue of the Petition's timeliness is governed by 28 U.S.C. § 2255(f)(1). Relevant to the instant case, the latest date a petition can be timely filed is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

In the instant case, both Petitioner and the Government rely on the March 19, 2018 denial of certiorari as the date on which the judgment became final. *See* ECF Nos. [6] & [13]. They both contend, therefore, that Petitioner had until March 19, 2019—the one-year mark from denial of certiorari—to timely file the § 2255 Petition. *Id*. The Government notes that the Petition was not filed until April 1, 2019—the date that Clerk's Office docketed the Petition—contending that the

Petition was filed beyond the one-year statute of limitations period. Likewise, the Government relies on Rule 3(d) of the Rules Governing Section 2255 Proceedings, noting that, because Petitioner failed to employ the prison's legal mail system, he is not entitled to the benefit of the mailbox rule for timeliness purposes.[4] Therefore, the Government argues that the Petition must be dismissed as untimely. ECF No. [6]. Petitioner, however, contends that the Petition was signed and delivered to his corrections officer on February 28, 2019, and that, with the application of the "Mailbox Rule," it should be considered filed on that date, and thus fall within the one-year statute of limitations period. ECF No. [13].

"Under the prison mailbox rule, a *pro se* prisoner's § 2255 motion is deemed filed on the date the prisoner delivers the motion to prison authorities for mailing." *Houser*, 808 F. App'x. at 971; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that "notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk"); *Jeffries*, 748 F.3d at 1314 (the Court presumes, "[a]bsent evidence to the contrary, . . . that a prisoner delivered a filing to prison authorities on the date that he signed it"). "Unless there is evidence to the contrary, like prison logs or other records, [courts] assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012). "The burden is on the Government to prove the motion was delivered to prison authorities on a date other than the date the prisoner signed it." *Jeffries*, 748 F.3d at 1314 (citing *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)).

The Government relies on the language in Rule 3(d) that, "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of [the mailbox]

---

[4] *But see Houser*, 808 F. App'x at 971-72 ("*Daniels*, our only published case regarding Rule 3(d), did not hold that strict compliance with Rule 3(d) is required before a § 2255 motion may be timely filed. Rather, in *Daniels*, . . . we applied the common law prison mailbox rule and explained that Daniels's § 2255 motion was presumed filed on . . . the date he signed and dated the motion." (citing *Daniels*, 809 F.3d at 589)).

rule," 28 U.S.C. § 2255 R.3(d), to support its position that the Petition is untimely. Petitioner, it argues, used the prison's regular mail system, as opposed to the legal mail system, in mailing his Petition, and he should therefore not be allowed to claim the benefits of the mailbox rule for timeliness purposes. ECF No. [6]. The Government also submits a declaration from a BOP staff member who works at Petitioner's prison facility, detailing the mailing procedures for legal mail versus general mail. ECF No. [6-2] ("Declaration"). This Declaration states that, although there is no formal mail log at the facility, all legal mail, upon receipt, is dated, designated as "Legal Mail" on the back of the envelope, and either stamped with the facility's mail room stamp or initialed by hand, and all legal mail is taken to the post office within twenty-four hours on business days. *Id.* at 4-5. Also appended to the Declaration are the prison facility's mail management procedures, which oddly only detail the requirements that mail staff date, log, and time stamp all *incoming* legal inmate mail, but fail to describe any procedures for outgoing legal mail beyond confirming an inmate's identity and "accept[ing] and process[ing the mail] according to national policy standards." *Id.* at 13-14.

Petitioner explains that on February 28, 2019, while his prison facility was on lockdown, he signed and dated his Petition, provided the correct postage, designated the Petition as "Legal Mail," and submitted it to his Case Manager "Mrs. K. Miller (A Unit Case Manager)." ECF No. [13] at 1-2. Remarkably, a brief examination of Petitioner's filings in this case reveal envelopes with handwritten or typed designations of "Legal Mail"—albeit not on the *back* of the envelope, as the Government and the Declaration emphasize—the majority of which do not contain any official mail room stamp as described in the Declaration and the mail management procedures. *See* ECF No. [1] at 13 (initialed and designated as "Legal Mail" on the front of the envelope); ECF No. [5] at 5 (designated as "Legal Mail" on the front of the envelope); ECF No. [7] at 3 (same);

ECF No. [9] at 3 (same); ECF No. [10] at 3 (same); ECF No. [13] at 11-12 (designated as "Certified Legal Mail" on the front of the envelope and stamped with FCC Coleman Mail Room stamp on the back of the envelope); *see also* ECF No. [6] at 13 (Government's Response emphasizing designation of legal mail or mail room stamp on the back of the envelope); ECF No. [6-2] at 4-5 (Declaration repeatedly emphasizing notations for legal mail on the *back* of the envelope).

None of the evidence the Government submits in support of its position establishes, or even raises an inference, that Petitioner did not deliver his Petition to mail staff on February 28, 2019, as he contends. The generalized and abstract mailing procedures, which are seemingly inconsistently applied, given the current record before the Court, do not lend any weight to the Government's argument that Petitioner failed to diligently submit his Petition to the mail staff. Rather, the photocopied envelopes on the record all suggest that Petitioner did submit his Petition through the proper legal mail system, and the absence of any additional mail room stamps, identifying mail logs, or other indication that the procedures attested to were enforced against Petitioner during the relevant times demonstrate that "the date a filing is delivered to prison authorities for mailing is the presumptive filing date." *Houser*, 808 F. App'x at 972-73; *see also Bullock v. United States*, 655 F. App'x 739, 742 n.3 (11th Cir. 2016) ("[T]he issue in this case is whether the government's evidence is sufficient to rebut [Petitioner's] contention that he delivered timely a section 2255 motion to prison authorities, but that the motion was never delivered to the court."). Accordingly, the Court concludes that the Petition is timely under § 2255(f)(1), in light of the February 28, 2019, filing date under the prison mailbox rule.

Upon review, in addition to timeliness under § 2255(f)(1), the Court notes that the fourth claim raised in the Petition is also timely under § 2255(f)(3). *See United States v. Duhon*, No. 5:11-CR-19-RH-MJF, 2020 WL 1078759, at *1 (N.D. Fla. Mar. 6, 2020) ("The timeliness of each claim

in a § 2255 motion must be evaluated on its own." (citing *Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013))). Section 2255(f)(3) states: "A 1-year period of limitation shall apply. . . from the latest of . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" 28 U.S.C. § 2255(f)(3).

Ground four of the Petition, *see* ECF No. [1] at 8; ECF No. [5], is based, in part, on *United States v. Davis*, 139 S. Ct. 2319 (2019), a Supreme Court case decided on June 24, 2019, that extended the holding of statutory unconstitutionality in *Johnson v. United States*, 576 U.S. 591 (2015), to the residual clause of 18 U.S.C. § 924(c). *Johnson* held that the residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. *Johnson*, 576 U.S. at 597. *Davis* subsequently extended the holding in *Johnson* and concluded that the residual clause in 18 U.S.C. § 924(c)(3)(b) was also unconstitutionally vague. *See Blackman v. United States*, 805 F. App'x 993, 995 (11th Cir. 2020) (per curiam) (citing *Davis*, 139 S. Ct. at 2336). Thus, "*Davis* announced 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* (quoting *In re Hammoud*, 931 F.3d 1032, 1038-39 (11th Cir. 2019)). The ruling in *Davis* is directly applicable to the final claim asserted in the Petition, as will be discussed in greater detail below. Petitioner has timely asserted his claim under *Davis* within the requisite one-year period. *See id.* (finding that the § 2255 motion was timely filed under *Davis*, and noting *Davis*, rather than *Johnson*, applies to convictions under § 924(c) (citing 28 U.S.C. § 2255(f)(3)).

Accordingly, the Court concludes that the Petition in this case was timely filed. As such, the Court proceeds to the substantive claims raised in the Petition.

**B.   Ineffective assistance of counsel claims**

**1.   Motion *in limine***

Petitioner first argues that his counsel was ineffective for failing to file a motion *in limine* in an attempt to prevent Petitioner's stepmother and roommate from testifying. ECF No. [1]. Federal Rule of Evidence 602 states that,

> [a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Fed. R. Evid. 602. Therefore, if Petitioner's stepmother and roommate each had personal knowledge of the Petitioner's criminal arrest, each were then competent to testify and a motion *in limine* would have been fruitless. ECF No. [6] (20:2-12).

As noted above, when a petitioner challenges a guilty plea based on ineffective assistance of counsel, the two-pronged *Strickland* test applies. *Hill*, 474 U.S. at 57; *see also Weeks*, 26 F.3d at 1036 (stating that ineffective assistance of counsel claims are governed by the two *Strickland* factors). Under the two-prong *Strickland* test, "First, the defendant must show that counsel's performance was deficient. . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687. If either of these two prongs are not met, the other prong does not need to be examined because both prongs must be satisfied. *Id.* at 697.

Petitioner does not address *Strickland*, or its two prongs, in either his Petition or in his Reply. ECF No. [1]; ECF No. [13]. The Government, however, raises several points as to why the two *Strickland* prongs are not met in Petitioner's first ground. ECF No. [6] (20:2-12). The Government contends that Petitioner's counsel would not have been able to prevent Petitioner's stepmother and roommate from testifying because each witness had personal knowledge related to Petitioner's criminal arrest. *Id.* Petitioner's stepmother had not only identified Petitioner in

seven of the eight robbery videos, but she had also identified the Green Toyota vehicle that Petitioner used as his get-away vehicle. CR ECF No. [48] (5:7-11).  Petitioner's stepmother rented the car, and let Petitioner borrow the car on the dates of the robberies. *Id.* (5:10-11). Likewise, Petitioner's roommate identified Petitioner in all eight videos, including several articles of clothing that Petitioner was wearing during the robberies. *Id.* (5:4-7). It was stated during the criminal case that the roommate had purchased the clothing in the video for Petitioner. *Id.* (5:6-7).

Petitioner's counsel during the criminal case chose not to file a motion *in limine* because he believed that the personal knowledge threshold was met for both the stepmother and the roommate. ECF No. [1]; ECF No. [6]. Petitioner fails to demonstrate in his Petition or in his Reply that either witness lacked personal knowledge, and instead only argues that the videos should not suffice for personal knowledge because neither witness was physically at the scene of the robbery. ECF No. [1]. The Court finds Petitioner's argument unavailing because each witness had personal knowledge of identifying items (get-away vehicle; articles of clothing) used by Petitioner in committing the robberies. As such, Petitioner has failed to meet the deficiency prong from *Strickland*.

Moreover, even if Petitioner had established that the witnesses lacked personal knowledge, he fails to address how the alleged deficient representation resulted in prejudice under *Strickland*. Petitioner fails to establish that, but-for the inclusion of these witnesses' testimony, Petitioner would not have plead guilty, as his lawyer advised. Yet, even if Petitioner would have successfully excluded the testimony of the two witnesses, he would still have had to face the overwhelming evidence against him, as will be discussed in greater detail below with regard to ground two. Petitioner's awareness of the overwhelming evidence against him is supported by his decision to ask for and then agree to a plea agreement, rather than proceeding to trial, as his lawyer was

prepared to do. Accordingly, because Petitioner has failed to satisfy either the deficiency or the prejudice prongs of *Strickland*, the Court concludes that ground one is due to be denied.

### 2. Counsel's "strategy of sympathy" defense

In his second claim, Petitioner argues that his counsel was ineffective for advising Petitioner to use the "strategy of sympathy." ECF No. [1]. As with Petitioner's first claim, this claim is governed by the two-prong *Strickland* analysis.

In terms of deficiency, an ineffective assistance of counsel claim "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *Weeks*, 26 F.3d at 1036; *Chandler*, 218 F.2d at 1313.

Due to the overwhelming amount of evidence against Petitioner during his criminal case, Petitioner's counsel made a strategic decision to use sympathy before the jury in an attempt to have several of the seventeen counts dismissed. CR ECF No. [58] at 6-7, 12-14. This overwhelming evidence against Petitioner included the following: he was arrested at the scene of the crime after attempting to rob a gas station on December 1, 2015 with a firearm; he was recognized by the gas station employee as the same person who successfully robbed the same gas station on November 8, 2015; he was caught on video tape during each of the eight gas station robberies wearing similar articles of clothing and brandishing the same firearm in the same left-handed position; his black shirt that he wore during several of the robberies, as caught on camera, was discovered during a search of his residence; his striped polo shirt that he wore during one of the robberies, as caught on camera, was discovered during a search of his residence; his stepmother and roommate were prepared to testify against the Petitioner identifying him as the perpetrator of

the robberies; his stepmother recognized the green Toyota Corolla car which Petitioner used as his get-away vehicle, because she rented the car; his roommate identified articles of clothing from the robbery videos that suspect wore, articles which roommate had purchased for Petitioner; and his wristband, firearm, and head covering that he wore during several of the robberies, as caught on camera, were found during his arrest. CR ECF No. [48]; ECF No. [6].

In response to all of this evidence, counsel advised Petitioner to plead guilty on three of the seventeen counts, and plead not guilty on the other fourteen. CR ECF No. [58]. Counsel believed that by admitting guilt on the three counts, and already going to be sentenced to a number of years in jail, that the jury would dismiss other counts based on sympathy. *Id.* Additionally, counsel believed that there was too much evidence against Petitioner to plead not guilty on all seventeen counts. As the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the Court finds that counsel's strategy of sympathy is one that falls within reasonable professional assistance, and thus was not deficient. *Strickland*, 466 U.S. at 689. Moreover, Petitioner does not address either *Strickland* prong in his Petition or in his Reply. ECF No. [1]; ECF No. [13].

Petitioner argues that counsel advised him to wear prison attire during the plea colloquy, which he contends should be viewed as a "clear violation of the right to counsel under the [Sixth] Amendment." ECF No. [13]. Petitioner contends that *Estelle v. Williams*; *United States v. Harris*; and *United States v. Villabona-Garnica* all support the notion that a defendant's due process rights are violated when compelled to wear prison attire in court. *Estell*, 425 U.S. 501 (1976); *Harris*, 703 F.2d 508, 509-11 (11th Cir. 1983); *Villabona-Garnica*, 63 F.3d 1051, 1058 n.6 (11th Cir. 1995); *see also* ECF No. [13].

After reviewing these cases, the Court finds that they do not apply to Petitioner's criminal case because Petitioner was not compelled to wear his prison attire during the plea colloquy. As the plea colloquy transcript reflects, Petitioner was asked numerous times by the Court if he would prefer to change into non-prison attire, as was his right to do. CR ECF No. [58]. The Court stated to Petitioner at the very beginning of the plea colloquy: "the Court's giving you an opportunity to change into some clothing that would not alert the jury to the fact that you are currently in custody. Would you like to change into those clothes, sir?" *Id.* (3:7-10). Petitioner, after clarification, replied "No, ma'am. I'm content with this." *Id.* (3:16). Later on, during the plea colloquy, when it was revealed by Petitioner's counsel that Petitioner was wearing the prison attire as part of the sympathy strategy, the Court once again asked Petitioner if he would prefer to change into non-prison attire: "Mr. Chandler, you've now heard Mr. Spivack's statement as to why he believes you should remain in your prison attire. Is that what you want to do, sir?" *Id.* (14:5-7). Petitioner responded: "Yes. I might as well stay." *Id.* (14:8). Petitioner therefore was not compelled or coerced into wearing and remaining in his prison attire during the proceedings; thus, Petitioner's due process rights were not violated. Accordingly, Petitioner's second claim is denied.

### 3. Defense investigation

In Petitioner's third claim, he argues that his counsel was ineffective for "failing to conduct a defense investigation." ECF No. [1]. Specifically, Petitioner contends that counsel dismissed Petitioner's claims that he had an alibi, as well as individuals who could corroborate his alibi, in an attempt to show that Petitioner did not commit the eight robberies. *Id.* at 7-8. Petitioner states that counsel met with him several times in order to discuss pleading and trial strategy. *Id.* However, counsel never asked Petitioner if he had an alibi on the dates of the robberies. *Id.* When Petitioner brought up the idea of an alibi, Petitioner claims that counsel rejected the idea, stating: "for what?

You are guilty, they have you on camera, they have people coming to testify that it was in-fact you in the robberies, and you was [sic] caught right after, why would I ask you for an alibi?" *Id.* Petitioner contends that he had a witness who could testify "to the dates and time of the robberies" that Petitioner was actually at work. *Id.* However, neither the Petition nor in his Reply provide the name of any witness or an affidavit from the witness providing an alibi as to Petitioner's location during the robberies. ECF No. [1]; ECF No. [13].

Petitioner argues in his Reply that, should the Court ask Petitioner for more information, Petitioner can then provide the witness' name. ECF No. [13] (9:2-3). However, it is not the role of this Court to fill in the blanks for Petitioner on his arguments. Therefore, Petitioner has not provided sufficient evidence to support his claim that he had an alibi witness that counsel failed to investigate. Moreover, without providing the name of the witness or an affidavit, Petitioner is making a conclusory allegation, which is below the acceptable standard required in an ineffective assistance of counsel claim. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("conclusory allegations of ineffective assistance are insufficient").

However, even assuming Petitioner did provide the name of a witness or an affidavit, he must still demonstrate that the deficiency and prejudice prongs under the *Strickland* analysis are satisfied. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*; *see also Chandler*, 218 F.2d at 1318 ("And counsel need not always investigate before pursuing or not pursuing a line of defense.

Investigation (even a non-exhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly.").

Applying *Strickland* to the instant facts, it is apparent that counsel's decision not to investigate the alibi of Petitioner was not deficient. Petitioner's counsel correctly noted that there was an overwhelming amount of evidence against the Petitioner, as discussed above. CR ECF No. [58]. Therefore, counsel decided that, rather than taking time away from developing a trial strategy for his client by pursuing a potential alibi, he would instead focus on the plea colloquy and the ensuing trial. The Court concludes that, given the overwhelming weight of the evidence against Petitioner, counsel made a reasonable strategic decision not to pursue or investigate the alleged alibi, believing that the investigation would be fruitless and potentially harmful to Petitioner's case, as it would have taken time away from more meritorious investigative avenues.

Moreover, even if the Court presumes that the deficiency prong of *Strickland* has been met, the prejudice prong is still not met. ECF No. [1]; ECF No. [13]. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In fact, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *but see Padilla*, 130 U.S. at 1485 ("a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). Because of the overwhelming evidence against Petitioner, it is unlikely that Petitioner would reject the plea agreement and risk receiving a longer sentence, even if there was one witness providing an alleged alibi for Petitioner. Thus, the prejudice prong has not been satisfied and the Court denies Petitioner's third claim.

### C. Hobbs Act robbery vagueness challenge

In Petitioner's final claim, he raises a preservation argument that "Hobbs Act Robbery is not a crime of violence under the element clause and 924(c)(3)(B) is unconstitutionally vague." ECF No. [1]. A petitioner can move to vacate his sentence under § 2255 arguing that the sentence "was imposed on a violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "a collateral challenge such as a 2255 motion, may not be a surrogate for a direct appeal." *Lynn*, 365 F.3d at 1232 (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases)). Instead, "(1) a defendant must assert all available claims on direct appeal," and (2) "relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn*, 365 F.3d at 1232 (quotations and internal citations omitted). When a claim has already been raised and reviewed on direct appeal, a petitioner is precluded from raising the same issue in a § 2255 motion unless there has been a change in the law. *See Hobson v. United States*, 825 F.2d 364, 366 (11th Cir. 1987), *vacated on other grounds*, 492 U.S. 913 (1989); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).

On his direct appeal, Petitioner raised a *Johnson* claim to challenge his conviction under 18 U.S.C. § 924(c). CR ECF No. [85]. *Johnson* ruled that the ACCA's residual clause, which defined a "violent felony," was unconstitutionally vague. *Johnson*, 576 U.S. at 594. Had *Davis* not been decided, Petitioner would have been barred from making his preservation claim here because Petitioner already raised *Johnson*'s applicability on his direct appeal. However, Petitioner ultimately supplemented his Petition to address *Davis*. ECF No. [5].

To succeed on a collateral challenge claim when applying *Davis*, Petitioner must show "not merely that the errors at trial [or sentencing] created a possibility of prejudice, but that they worked

to his actual and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Frady*, 456 U.S. at 170). Petitioner has the burden of showing that but for the error, there is a reasonable probability that his sentencing would have been judged by the district court differently. *See Mincey v. Head*, 206 F.3d 1106, 1147 (11th Cir. 2000). The Eleventh Circuit has ruled that when there is an unconstitutional sentence based on 18 U.S.C. § 924(c), the sentence "affect[s] the defendant's substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Mays v. United States*, 817 F.3d 728, 737 n.12 (11th Cir. 2016).

The Court must therefore determine whether this Court's sentencing decision was based upon the residual clause under 18 U.S.C. § 924(c)(3)(B). Petitioner bears "the burden of showing that he is actually entitled to relief on his *Davis* claim, meaning he [has] to show that his § 924(c) conviction resulted from application of solely the residual clause." *Reyez v. United States*, 794 F. App'x 925, 926 (11th Cir. 2020) (per curiam) (citing *In Re Hammoud*, 931 F.3d at 1040-41; *Beeman*, 871 F.3d at 1222-25); *In re Cannon*, 931 F.3d 1236, 1243 (11th Cir. 2019) (finding "movant . . . bears the burden of proving the likelihood that the jury based its verdict of guilty. . . solely on the [offense that is not a crime of violence under § 924(c)'s residual clause], and not also on one of the other valid predicate offenses identified in the count. . . ." (citing *Beeman*, F.3d at 1222; *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016))); *Rosales-Diaz v. United States*, 805 F. App'x 660, 665 (11th Cir. 2020).

The Eleventh Circuit has held that a felony offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A), the elements clause, because it "has as an element, the use, attempted use, or threatened use of physical force against the person or property of another." *See Wilkes v. United States*, 791 F. App'x 883, 884 (11th Cir. 2020) (quoting 18 U.S.C. § 924(c)(3)(A)); *Steiner*

*v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019) (citing *Davis*, 139 S. Ct. at 2236)); *Grant v. United States*, 694 F. App'x 756, 757 (11th Cir. 2017) (citing 18 U.S.C. § 924(c)(3)). The elements clause under § 924(c)(3)(A) is defined as a crime of violence offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," whereas the residual clause under § 924(c)(3)(B) is an offense that is a felony and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. §§ 924(c)(3)(A)-(B). To establish that the district court relied on the residual clause under § 924(c)(3)(B), rather than the elements clause under § 924(c)(3)(A), Petitioner must point to "direct evidence: comments or findings by the sentencing judge indicating that the residual clause was relied on . . . ." *Beeman*, 871 F.3d at 1224 n.4.

Here, Petitioner was sentenced under the elements clause of § 924(c)(3)(A); not the residual clause of § 924(c)(3)(B), because the Eleventh Circuit has held that Hobbs Act robbery falls under § 924(c)'s elements clause. *See United States v. White*, 806 F. App'x. 936, 937 (11th Cir. 2020) (citing *United States v. St. Hubert*, 909 F.3d 335, 344 (11th Cir. 2018), *abrogated on other grounds by Davis*, 139 S. Ct. 2319; *In re Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016)). In this case, Petitioner was convicted of Hobbs Act robbery, which is a crime of violence under the elements clause of § 924(c)(3)(A). *Davis* is only applicable to § 924(c)(3)(B), and it does not extend or apply to § 924(c)(3)(A). *See United States v. Duhart*, 803 F. App'x 267, 270 (11th Cir. 2020) ("*Davis* invalidated § 924(c)(3)'s residual clause but left its elements clause intact." (citing *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019))). As such, the Court concludes that the holding in *Davis* is not applicable to Petitioner. Thus, this claim is denied on the merits.

### D.  Evidentiary Hearing

Petitioner requests an evidentiary hearing on each of his three ineffective assistance of counsel claims. ECF No. [1]. On a motion under 28 U.S.C. § 2255, the Court may hold an evidentiary hearing, but does not need to if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (finding no abuse of discretion when district court declined to hold a hearing when movant's allegations of prejudice were affirmatively contradicted by the record); *Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017) ("[T]he district court did not abuse its discretion by declining to hold an evidentiary hearing because . . . Stilwell's contention that he would not have pled guilty but for his counsel's advice is contradicted by the record, namely the plea agreement and the plea colloquy."). Upon review and consideration, the Court finds that an evidentiary hearing is not warranted because the record demonstrates that Petitioner is entitled to no relief.

### E.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his § 2255 motion to vacate does not have an absolute entitlement to appeal, and in order to do so, must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *Wilkinson v. Dotson*, 544 U.S. 74, 78-83 (2005)). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has denied a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has denied a

Case No. 19-cv-60853-BLOOM/Reid

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, upon consideration of the record as a whole, the Court concludes that no certificate of appealability shall issue.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Petition, **ECF No. [1]**, is **DENIED**.

2.  No Certificate of Appealability shall issue.

3.  To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED.**

4.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 21, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

Zachary Chandler
10700-104
Coleman I-USP United States Penitentiary
Inmate Mail/Parcels
Post Office Box 1033
Coleman, FL 33521